IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DONNA CHATHAM,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 15-cv-134-CJP[1] |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM and ORDER**

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Donna Chatham is before the Court, represented by counsel, seeking judicial review of the final agency decision denying her Disability Insurance Benefits (DIB).

**Procedural History**

Plaintiff applied for DIB on May 5 2012. In her application she alleged disability beginning on December 2, 2011. Plaintiff later amended her onset date to August 29, 2012. (Tr. 18-20). Administrative Law Judge (ALJ) Bradley Davis held an evidentiary hearing on October 29, 2013. After the hearing, ALJ Davis denied the application in a decision dated November 7, 2013. (Tr. 18-26). Plaintiff's request for review was denied by the Appeals Council, and the

---

[1] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 11.

decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following point:

1. The ALJ erred in ignoring the testimony from the vocational expert.

## Applicable Legal Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. §423(d)(1)(A).**

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. **42 U.S.C. §423(d)(3).** "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. **20 C.F.R. §§ 404.1572.**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step

2

> compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

***Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).**

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience.  **20 C.F.R. §§ 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).**

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job.  ***Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).** See also, ***Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001**) (Under the

3

five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled… If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." **42 U.S.C. § 405(g)**. Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. See**, Books v. Chater, 91 F.3d 972, 977-78 (7th Cir. 1996)(citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995))**.

The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." **Richardson v. Perales, 402 U.S. 389, 401 (1971).** In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. **Brewer v. Chater, 103 F.3d 1384, 1390 (7th Cir. 1997)**. However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, **Parker v. Astrue, 597 F.3d 920,**

921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

ALJ Davis followed the five-step analytical framework described above. He determined that plaintiff had not been engaged in substantial gainful activity since the alleged onset date. The ALJ found that plaintiff had severe impairments of degenerative disc disease, residuals of status post left shoulder surgery, tarsal tunnel syndrome, and bipolar disorder. The ALJ further determined that these impairments do not meet or equal a listed impairment.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform work at the light level, with physical and mental limitations. Based on the testimony of a vocational expert (VE), the ALJ found that plaintiff was able to perform her past relevant work as a housekeeper. (Tr. 18-26).

## The Evidentiary Record

The court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by the plaintiff.

1. **Agency Forms**

Plaintiff was born on August 29, 1957 and was fifty-five years old on her alleged onset date. She was insured for DIB through December 31, 2016. (Tr. 186). She was five feet seven inches tall and weighed one hundred and thirty-nine pounds. (Tr. 196). She completed cosmetology school in 1976 and one year of college in 2007. She previously worked as a babysitter, bus driver, class

aide, disabled adult aide, and a janitor in an assisted living facility and in a hospital. (Tr. 197).

Plaintiff felt her bipolar disorder, post-traumatic stress disorder, cervical spine pain, tarsal tunnel syndrome, and limited use of her left arm made her unable to work. (Tr. 196). She took Lamictal and Bupropion for her bipolar disorder, Strattera for attention deficit disorder, Clonidine for post-traumatic stress disorder, and Fluoxetine for depression and bipolar disorder. Plaintiff stated that the Bupropion, Clonidine, Fluoxetine, and Lamictal caused drowsiness. (Tr. 217).

Plaintiff completed a function report in October 2012. (Tr. 221-29). Plaintiff stated her left foot swelled frequently and she was only able to be on her feet for fifteen minutes at a time. She had limited usage of her left arm and carpal tunnel syndrome in her right hand. Additionally, she had difficulty concentrating due to post-traumatic stress disorder and bipolar disorder. (Tr. 221). Plaintiff visited her mother at a nursing home every other day and took care of her dogs. (Tr. 222). She made microwavable meals and sandwiches every day. She stated that she was able to perform light housework but it took all day due to needing to take breaks. (Tr. 223). She had a driver's license and shopped for her family's groceries. (Tr. 224). For fun, plaintiff listened to music, watched television, and played cards. (Tr. 225).

Plaintiff claimed she had difficulty lifting, squatting, bending, standing, reaching, walking, kneeling, climbing stairs, remembering, completing tasks, concentrating, understanding, following instructions, using her hands, and

getting along with others. She could walk less than a block without needing to stop and rest for a few minutes. (Tr. 226). She stated that she had difficulty paying attention and accepting criticism. (Tr. 227).

### 2. Evidentiary Hearing

Plaintiff was represented by counsel at the evidentiary hearing on October 29, 2013. (Tr. 34). Plaintiff was fifty-six years old and had a beautician's license. (Tr. 38). She was working six hours a week at a YMCA children's center as a childcare technician. She played with the kids but could not pick them up. (Tr. 39). She testified that she could not stand for long due to her leg, back, and foot problems. She felt she could stand for five minutes before needing to sit or lie down and had difficulty sitting for long periods of time. (Tr. 41-42). One of plaintiff's doctors restricted her to carrying twenty pounds maximum. (Tr. 42). She also was unable to lift her left arm over her head so she had to use her right arm to perform household activities. (Tr. 43).

When the ALJ asked plaintiff if she performed household chores she responded that she did everything. (Tr. 44). She did the laundry, vacuum, and dusted. (Tr. 44-45). She testified that she kept her cleaning brief. (Tr. 45). When plaintiff bent down, kneeled, or squatted she had to have assistance to return to the standing position. (Tr. 46-47). Plaintiff's last full time job was in housekeeping at a residential center for elderly people. (Tr. 48). She performed that job for one year before being fired. (Tr. 48). She testified that she could not return to that type of work due to her bulging disc which presented after she left the housekeeping job. (Tr.48- 51).

A vocational expert (VE) also testified. The ALJ asked the VE a hypothetical question where a person of plaintiff's age and work history that was able to perform work at the light level and could only occasionally use her non-dominant upper extremity for overhead work. Additionally, the person would be limited to simple, routine, and repetitive tasks. (Tr. 55-56). The VE stated that plaintiff's previous work as a hospital housekeeper and bus driver would be precluded. However, the VE testified that plaintiff's work as a cleaner housekeeper at the assisted living facility would still be available. (Tr. 56).

Plaintiff's attorney further questioned plaintiff as to her previous job's description and the VE stated that as plaintiff performed her job it would be classified as medium work but in the dictionary of occupational titles it is classified as light work. (Tr. 56-61). After further questioning from the ALJ and plaintiff's attorney, the VE stated that even though the cleaner housekeeper job is considered light work it would generally not allow for sitting. (Tr. 62-63). If sitting were a requirement of the job it would be classified as sedentary work. (Tr. 63).

### 3. Medical Evidence

Plaintiff received psychotherapy treatment from Dr. Craig Voorhees from 2004 through 2012. Plaintiff regularly saw Dr. Voorhees for depression, obsessive compulsive disorder, and stress related issues. (Tr. 250-329, 415-33). Plaintiff also sought psychiatric treatment from Dr. Srinivas Chilakamarri and C Group Psychiatric Services from 2010 through 2012. (Tr. 372-81, 396-400). Dr. Chilakamarri diagnosed plaintiff with bipolar disorder and attention

8

deficit disorder. He prescribed several different psychotropic medications to help alleviate plaintiff's problems. Plaintiff saw positive results when she consistently took her medications and received counseling. (Tr. 373, 377, 381, 399).

In 2010 plaintiff had surgery to repair a left neck proximal humerus fracture. Follow-up examinations with physicians at Belleville Orthopedic Surgeons showed her fracture healing well but with a limited range of motion in her left shoulder. (Tr. 336). Plaintiff had cervical pain that radiated along her trapezius and her orthopedic surgeon referred her to a neurosurgeon and a pain management specialist. (Tr. 336, 340). Plaintiff received several steroid injections in her neck to alleviate pain and attended physical therapy. (Tr. 342-43, 347-48, 349).

In 2011 plaintiff presented with numbing in her hands and continued difficulty with her shoulder. Electrodiagnostic testing revealed moderate carpal tunnel syndrome in plaintiff's right hand. (Tr. 356-57). Plaintiff saw Dr. Karl Collins, DPM, several times in 2011 and 2012 for diagnosed left foot tarsal tunnel syndrome and hell spur syndrome. (Tr. 364-66, 408-11). Plaintiff received injection therapy, medications, and physical therapy. (Tr. 364-66, 408-14, 441). Plaintiff experienced some relief from physical therapy but stopped attending sessions and her pain returned. (Tr. 436, 441).

In September 2013 plaintiff had an MRI of her lumbar spine taken due to radiating pain in her lower extremities. The MRI indicated plaintiff had multilevel degenerative disc disease with degenerative discogenic bulges and a

9

right-sided foraminal disc protrusion at L3-L4. (Tr. 445, 458-59). Plaintiff attended physical therapy and took medications such as Mobic and Neurontin. (Tr. 445). Plaintiff's physical therapy notes indicate she was improving but still had considerable pain and partial paresthesia of her right lower extremity due to her spinal conditions. (Tr. 444). She visited a chiropractor ten times in 2012 and 2013 and seemed to have some improvement with radiating pain as a result. (Tr. 480-82).

### 4. Consultative Examinations

In July 2012, plaintiff underwent a psychological consultative examination with Dr. Harry Deppe. (Tr. 387-90). Plaintiff displayed a full range of affect and her mood was within normal limits. (Tr. 388). Dr. Deppe's clinical impressions were that plaintiff's ability to relate to others, including fellow workers and supervisors, and her ability to maintain attention required to perform simple, repetitive tasks were intact. (Tr. 389-90). He also opined that her general prognosis was good and that she could withstand the stress and pressures associated with day to day work activity. Dr. Deppe's diagnoses were post-traumatic stress disorder in partial remission and personality disorder not otherwise specified. (Tr. 390).

In July 2012, plaintiff also underwent a physical consultative examination with Dr. Vittal Chapa. (Tr. 391-93). Dr. Chapa's diagnostic impressions were status post left humerus fracture and history of left tarsal tunnel syndrome. (Tr. 393). In Dr. Chapa's summary, he stated that plaintiff had a left humerus fracture and decreased range of motion in her left shoulder. Her grip strength

10

was 4/5 on the left and 5/5 on the right. Plaintiff could perform both fine and gross manipulations with both hands. Plaintiff walked with a slight limp but there was no evidence of lumbar radiculopathy. (Tr. 393).

## Analysis

Plaintiff argues that the ALJ erred by ignoring testimony from the VE. Her primary argument is that since the VE testified that a cleaner housekeeper job did not allow for any sitting, and the ALJ found plaintiff could not stand or walk for more than six hours a day, plaintiff could not perform the job as it is performed.

Plaintiff's argument is well taken. The hypothetical the ALJ gave the VE allowed for plaintiff do perform "light work" with no indication as to the amount of standing or walking that takes place during that time. SSR 83-10 states that "light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time."

However, in the case at hand, the cleaner housekeeper job that the VE stated plaintiff could perform allows for no sitting even though it is considered light work. (Tr. 61). Plaintiff's attorney clarified further when he asked "even though that jobs is consider light, which would generally be six out of eight standing, the housekeeper job is realistically. . . eight out of eight standing or walking?" (Tr. 62). The VE testified that yes, a person that performs this housekeeping job would not generally be allowed to sit. (Tr. 62).

The ALJ gave no indication that he felt plaintiff would need to sit during a workday until his ultimate RFC assessment stated that plaintiff could only stand or walk for six hours out of an eight hour day. This would require plaintiff to sit for at least two hours in the day to complete a full workday which she would be unable to do at the cleaner housekeeper job. The Commissioner argues that the VE's testimony did not conflict with the DOT and the ALJ was allowed to rely on this testimony as a result. This is true if the ALJ's ultimate RFC had matched the question he posed to the VE. The Seventh Circuit has held that hypothetical questions must orient the vocational expert to the totality of a claimant's limitations. ***O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010).** The ALJ's failure to include the limitations he posed in his RFC assessment is error.

Plaintiff goes on to argue that per the Medical Vocational Guidelines plaintiff is, by default, disabled. However, the Court notes that the Medical Vocational Guidelines are only applicable when claimants can perform a full range of work at a certain level. **20 C.F.R. Part 404, Subpart P, Appendix 2, §200.00(e).** See also, ***Haynes v. Barnhart*, 416 F.3d 621, 628-629 (7th Cir. 2005).** Plaintiff's range of motion on her left arm was restricted and she was unable to perform more than simple, routine, repetitive tasks. As a result, the Medical Vocational Guidelines are not relevant. However, the ALJ's failure to reconcile how the differences in his RFC assessment and the requirements of job he stated plaintiff could perform is reversible error.

The ALJ is "required to build a logical bridge from the evidence to his conclusions." ***Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009).** ALJ Davis simply failed to do so here. "If a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." ***Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012)., citing *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).**

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff is disabled or that she should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying Donna Chatham's application for social security disability benefits is **REVERSED and REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of **42 U.S.C. §405(g).**

The Clerk of Court is directed to enter judgment in favor of plaintiff.


**IT IS SO ORDERED.**

**DATE: December 11, 2015.**


**s/ Clifford J. Proud**

**CLIFFORD J. PROUD**

13

**UNITED STATES MAGISTRATE JUDGE**